United States District Court
Southern District of Texas

**ENTERED**

March 26, 2026

Nathan Ochsner, Clerk

### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| MARLON JOSELO PENAFIEL CLAVIJO,<br>　　　Petitioner, | § § § § § | CIVIL ACTION NUMBER<br>4:26-cv-01454 |
| versus | § § § | JUDGE CHARLES ESKRIDGE |
| RAYMOND THOMPSON,<br>*et al*,<br>　　　Respondents. | § § § | |

### OPINION AND ORDER ON DISMISSAL

Petitioner Marlon Joselo Penafiel Clavijo filed a petition for writ of *habeas corpus* under 28 USC §2241 on February 23, 2026. Dkt 1. He acknowledges illegal entry into the United States at a prior date but nonetheless asserts that his present detention without a bond hearing under 8 USC §1225(b) violates (i) the Immigration and Nationality Act, (ii) procedural due process, (iii) the Fourth Amendment and 8 USC §1357(a)(2), and (iv) the *Accardi* doctrine pursuant to 8 CFR §287.8(b)(2). Id at ¶¶67–102.

Pending is a motion by the Government for summary judgment. Dkt 6. It maintains that no bond hearing is required because Petitioner is an "applicant for admission" under 8 USC §1225(b)(2)(A), which provides for mandatory detention during removal proceedings. Id at 2–3.

The Fifth Circuit has now issued a controlling decision in *Buenrostro-Mendez v Bondi*, 166 F4th 494 (5th Cir 2026). In sum, it holds that anyone present in the United States without legal admission is both an "applicant for admission" and deemed to be "seeking admission," and that all such persons are thus subject to mandatory detention under 8 USC §1225(b)(2)(A). Such determination forecloses

Petitioner's statutory arguments under the INA. *See also Herrera Avila v Bondi*, 2026 WL 819258 (8th Cir) (holding to same effect).

The undersigned previously resolved that and an array of closely related issues upon determination that the Government may properly apply 8 USC §1225(b)(2)(A) in circumstances similar to those of Petitioner. For example, see:

- o *Montoya Cabanas v Bondi*, 2025 WL 3171331 (SD Tex): Finding that (i) the term "applicant for admission" is determinative, as it is broadly defined to include anyone "present in the United States who has not been admitted," (ii) application of §1225(b)(2)(A) doesn't render superfluous the amendment to §1226 by the Laken Riley Act, and (iii) no due process violation occurs where constitutional argument depends on rejected statutory interpretation of §§1225 and 1226.

- o *Herrera Naranjo v Uhls*, 2025 WL 3771447 (SD Tex): Rejecting contention that (i) the text of §1225(b)(2)(A) is ambiguous, with resort to other canons of statutory construction thus being unnecessary, (ii) the location of petitioner's arrest may itself violate due process or otherwise make detention unlawful, and (iii) prior work authorizations confer lawful status.

- o *Rodriguez-Hidalgo v Noem*, 4:25-cv-05730 (SD Tex, Jan 9, 2026): Rejecting arguments based on (i) bond regulations, because statutory language prevails over putative conflicting regulations, (ii) due process, because the Government may constitutionally detain deportable aliens during the limited period necessary for their removal proceedings, and (iii) eligibility for adjustment of status under the Cuban Adjustment Act, because such is outside the scope of *habeas* jurisdiction.

2

- o *Cairo Ceniz v Bondi*, 4:26-cv-00017 (SD Tex, Jan 21, 2026): Expressly finding "applicants for admission" to be a subset of those "seeking admission" under 8 USC §1225(a)(3).
- o *Garcia Tabon v Dickey*, 4:25-cv-06145 (SD Tex, Jan 22, 2026): Rejecting argument under Administrative Procedure Act where it depends on rejected statutory interpretation of §§1225 and 1226.
- o *Vargas Ordonez v Frink*, 4:25-cv-06386 (SD Tex, Jan 20, 2026): Rejecting argument under Fourth Amendment where it depends on rejected statutory interpretation of §§1225 and 1226.

As noted within the above citations, a claim under the Due Process Clause of the Fifth Amendment necessarily fails to the extent that it proceeds upon reliance of rejected statutory interpretation as to the applicability of §1226. For example, see *Montoya Cabanas*, 2025 WL 3171331 at *6–7; *Herrera Naranjo*, 2025 WL 3771447 at *2. Further, the Supreme Court has recognized that "the Government may constitutionally detain deportable aliens during the limited period necessary for their removal proceedings." *Maceda Jimenez v Thompson*, 2025 WL 3265493, *1 (SD Tex), quoting *Demore v Kim*, 538 US 510, 523 (2003).

As also noted above, a claim under the Administrative Procedure Act likewise fails to the extent that it proceeds upon reliance of the same rejected statutory interpretation. Such claims are also foreclosed by 5 USC §704, given that adequate remedy exists through *habeas* relief. For example, see *Garcia Tabon*, 4:25-cv-06145, Dkt 14 at 3; *Sanchez-Sanchez*, 4:26-cv-00144, Dkt 7 at 2–3.

The undersigned has also determined that the order entered in *Bautista v Santacruz*, 2025 WL 3713987 (CD Cal), which purported to certify a nationwide class, far exceeded the jurisdiction of the Central District of California. See *Sanchez-Sanchez*, 4:26-cv-00144, Dkt 7

3

at 2, adopting reasoning of *Calderon Lopez v Lyons*, 2025 WL 3683918 (ND Tex) (Hendrix, J). The *Bautista* order also remains on appeal in the Ninth Circuit, which recently "temporarily stayed" the judgment "insofar as [it] extends beyond the Central District of California." See *Bautista v Department of Homeland Security*, 26-1044 (9th Cir), Dkt 5. It thus cannot have preclusive effect here. In any event, a district court isn't bound by another district court's ruling. *See Camreta v Greene*, 563 US 692, 709 n 7 (2011). This is particularly true in the present circumstances, where the Fifth Circuit has now decided the same issue contrary to the Central District of California. See *Buenrostro-Mendez*, 166 F4th at 501–08.

To the extent that Petitioner otherwise relies on arguments not already raised and resolved to the contrary in the decisions above, they lack merit.

*As to due process*, Petitioner frames the claim most expansively in procedural terms. But his arguments appear to implicate both procedural and substantive due process. See Dkt 1 at ¶¶73–87. As such, both will be addressed.

With respect to procedural due process, Petitioner proceeds on the assumption that the three-factor balancing test set forth in *Mathews v Eldridge*, 424 US 319 (1975), applies in this context. With reference to *Mathews*, he analyzes each of the three factors upon argument that "due process requires an individualized assessment of necessity rather than automatic incarceration." Dkt 1 at ¶¶78–83. The central contention is thus that procedural due process affords *stand-alone* procedures, beyond statute, in the form of a bond hearing or individualized custody determination on questions such as potential flight risk or danger to the community.

To the contrary, the starting point must consider what *process* is actually due *under* the pertinent statutory framework itself. The Supreme Court's decision in *Connecticut Department of Safety v Doe*, 538 US 1 (2003), illustrates this point. The state statute at issue required all sex offenders to register so that their information could be

4

published on a state sex-offender registry. Id at 4–5. The respondent was a convicted sex offender. He argued that the law violated his procedural due process rights by requiring him to register without a hearing as to whether he was "currently dangerous." Id at 6. The Court rejected the argument, holding, "Plaintiffs who assert a right to a hearing under the Due Process Clause must show that the facts they seek to establish in that hearing are relevant *under the statutory scheme*." Id at 8 (emphasis added). While the respondent wanted to establish by hearing that he was "not currently dangerous," that fact was "of no consequence" under the statute, which required registration of *all* convicted sex offenders without regard to any individualized finding of dangerousness. Id at 7; see also *Duarte v City of Lewisville*, 858 F3d 348, 352 (5th Cir 2017) (rejecting procedural due process challenge where showing as to dangerousness was "of no consequence" to proscription under zoning ordinance).

In his concurring opinion, Justice Scalia provided additional context indicating that many statutes, of their nature, require that any challenge must be through only *substantive*, and not *procedural*, due process:

> Absent a claim (which respondent has not made here) that the liberty interest in question is so fundamental as to implicate so-called "substantive" due process, *a properly enacted law can eliminate it*. That is ultimately why, as the Court's opinion demonstrates, a convicted sex offender has no more right to additional "process" enabling him to establish that he is not dangerous than (in the analogous case just suggested) a 15–year–old has a right to "process" enabling him to establish that he is a safe driver.

538 US at 8–9 (emphasis added); see also id at 8 (majority opinion, observing that asserted due process claim was, in actuality, a substantive due process challenge simply

"recast in 'procedural due process' terms"), quoting *Reno v Flores*, 507 US 292, 308 (1993).

That's the situation here. The pertinent statute, 8 USC §1225(b)(2)(A), *mandates* detention of those falling within the definition of "applicants for admission" without regard to any individualized custody determination concerning dangerousness or flight risk. And the Fifth Circuit in *Buenrostro-Mendez* has now determined that such detention lawfully applies to "applicants for admission" like Petitioner. A hearing as to dangerousness or flight risk is thus irrelevant to the *lawfulness* of his detention under the statute.

In sum, procedural due process doesn't require the sort of bond hearing or individualized custody determination requested by Petitioner. Beyond that, the Supreme Court has "never viewed *Mathews* as announcing an all-embracing test for deciding due process claims." *Dusenberry v United States*, 534 US 161, 168 (2002). As stated by Judge Wesley Hendrix of the Northern District of Texas, when rejecting a procedural due process claim in a similar immigration context, "The application of *Mathews* to Section 1226 cases is 'unwarranted on the test's own terms.'" *Diaz Patino v Villegas*, 2026 WL 673166, \*4 (ND Tex), quoting *Ladak v Noem*, 2025 WL 3764016, \*7 (ND Tex).

To the extent that Petitioner's arguments might be construed as raising a substantive due process claim, they are also unavailing. As with procedural due process, substantive due process isn't itself a free-floating subject. It instead extends only to "those fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition." *Washington v Glucksberg*, 521 US 702, 720–21 (1997). The Supreme Court has observed that, in light of Congress's "broad power over naturalization and immigration," it "regularly makes rules that would be unacceptable if applied to citizens." *Mathews v Diaz*, 426 US 67, 79–80 (1976). It also holds, "Detention during removal proceedings is a constitutionally permissible part of that process." *Demore v Kim*, 538 US 510, 531

(2003) (citations omitted). As such, "the Government may constitutionally detain deportable aliens during the limited period necessary for their removal proceedings." Id at 526.

The undersigned has previously determined that, while *post*-removal-order detention under *Zadvydas v Davis*, 533 US 678, 701 (2001), "requir[es] a constitutional constraint on unbounded detention," detention pending a determination of removability "is a constitutionally permissible part of [the removal] process." *Maceda Jimenez v Thompson*, 2025 WL 3265493, *1 (SD Tex); see also *Sanchez v Smith*, 2025 WL 3687914, *2–3 (SD Tex). Likewise, a number of decisions support the conclusion that substantive due process doesn't require a bond hearing at odds with the terms of §1225(b)(2)(A). See *Diaz Patino*, 2026 WL 673166 at *3 (Hendrix, J); *Salazar-Gonzalez v Noem*, 4:25-cv-04662 (SD Tex, Feb 12, 2026) (Hanen, J); *Jimenez v Bradford*, 4:25-cv-05853 (SD Tex, Feb 10, 2026) (Lake, J).

Beyond this, and even if a *Zadvydas*-like due process limitation applies to *pre*-removal-order detention, Petitioner has been in detention for a duration not exceeding the presumptively reasonable six-month period enunciated there. See *Zadvydas*, 533 US at 701. His detention, at present, thus cannot be said to violate substantive due process.

*As to the Fourth Amendment, 8 USC §1357(a)(2), and the* Accardi *doctrine,* Petitioner's arguments arise from his purported "warrantless arrest" on November 19, 2025. Dkt 1 at ¶¶88–102. But the Government provided evidence of a warrant for Petitioner's arrest, signed by an immigration officer and dated November 19, 2025. Dkt 6-1 at 5–6 (warrant). He nonetheless maintains in reply that such evidence is insufficient and "does not dispose of [his] Fourth Amendment or *Accardi* claims." Dkt 7 at 5. But he doesn't provide any persuasive explanation or credible argument for why that is so. As such, the evidence that Petitioner was arrested pursuant to a warrant forecloses his claims based on warrantless arrest.

7

The motion for summary judgment by the Government is GRANTED. Dkt 6.

The petition for writ of *habeas corpus* by Petitioner Marlon Joselo Penafiel Clavijo is DENIED. Dkt 1.

This action is DISMISSED WITH PREJUDICE.

A final judgment will enter separately.

SO ORDERED.

Signed on March 26, 2026, at Houston, Texas.

_____
Honorable Charles Eskridge
United States District Judge